O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MANUEL SALAZAR RODRIGUEZ,

    Plaintiff,

    v.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social
Security,

    Defendant.

) NO. CV 12-06230-MAN
)
)
)
) MEMORANDUM OPINION
)
) AND ORDER
)
)
)
)
)
)

Plaintiff filed a Complaint on August 4, 2012, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  On August 30, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on May 23, 2013, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties'

---

[1]     Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

1  Joint Stipulation under submission without oral argument.

2

3  **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

4

5       Plaintiff filed an application for SSI on November 2, 2007, and an application for a period

6  of disability and DIB on November 21, 2007.  (Administrative Record ("A.R.") 12.)  Plaintiff, who

7  was born on February 7, 1988 (A.R. 21),[2] claims to have been disabled since November 1, 2007,

8  due to a psychotic disorder not otherwise specified, a personality disorder not otherwise specified,

9  a history of marijuana use, and osteochondroma (A.R. 14).  Plaintiff has no past relevant work

10  experience.  (A.R. 15.)

11

12       After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff

13  requested a hearing.  (A.R. 12.)  On April 22, 2010, plaintiff, who was represented by counsel,

14  appeared and testified at a hearing before Administrative Law Judge David M. Ganly (the "ALJ").

15  (*Id.*)  This initial hearing was continued to permit plaintiff to obtain outstanding treatment

16  records.  (A.R. 12.)  On July 30, 2010, plaintiff, who again was represented by counsel, appeared

17  and testified at a second administrative hearing.  (*Id.*)  Vocational expert Troy Scott and medical

18  expert Joseph Malancharuvil also testified.  (*Id.*)  On August 13, 2010, the ALJ denied plaintiff's

19  claim (A.R. 12-22), and the Appeals Council subsequently denied plaintiff's request for review of

20  the ALJ's decision (A.R. 5-7).  That decision is now at issue in this action.

21

22  **SUMMARY OF ADMINISTRATIVE DECISION**

23

24       In his August 13, 2010 decision, the ALJ found that plaintiff met the insured status

25  requirements of the Social Security Act through December 31, 2006, and plaintiff has not engaged

26  in substantial gainful activity since November 1, 2007, the alleged onset date of his disability.

27  _____

28       [2]       On the alleged disability onset date, plaintiff was 19 years old, which is defined as a younger individual.  (A.R. 21; citing 20 C.F.R. §§ 404.1563, 416.963.)

1   (A.R. 14.)  The ALJ determined that plaintiff has the severe impairments of psychotic disorder not

2   otherwise specified, personality disorder not otherwise specified, and a history of marijuana use

3   four years ago, but he does not have an impairment or combination of impairments that meets

4   or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

5   (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).[3]  (A.R. 14-15.)

6

7   After reviewing the record, the ALJ determined that plaintiff has the residual functional

8   capacity ("RFC") to perform "a significant range of medium work" as defined in 20 C.F.R. §§

9   404.1567(c) and 416.967(c) with the following limitations:  "[plaintiff] can lift and/or carry 50

10   pounds occasionally and 25 pounds frequently"; "[plaintiff] can stand and/or walk 6 hours in an

11   8-hour workday . . . [and] can sit intermittently during the remaining time in the workday";

12   "[plaintiff] can perform simple repetitive tasks with 4-step instruction[s]"; "[plaintiff] can perform

13   object oriented work"; [plaintiff] can have no intense interaction with supervisors and only

14   minimal interaction with the general public"; and "[plaintiff] cannot be responsible for the safety

15   of others and cannot perform positions of hyper[]vigilance."  (A.R. 15-16.)  Based upon the ALJ's

16   RFC assessment for plaintiff and after having considered plaintiff's age, education,[4] work

17   experience, and the testimony of the vocational expert, the ALJ found that "there are jobs that

18   exist in significant numbers in the national economy that [plaintiff] can perform," including the

19   jobs of industrial cleaner, hand packager, machine feeder, and bench assembler.  (A.R. 21-22.)

20   Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the

21   Social Security Act, from November 1, 2007, the alleged onset date, through August 13, 2010,

22   the date of the ALJ's decision.  (A.R. 22.)

23   ///

24   ///

25   ///

26

27   [3]   The ALJ also determined that plaintiff's impairment of osteochondroma is not severe. (A.R. 14.)

28   [4]   The ALJ found that plaintiff has at least a high school education and is able to communicate in English.  (A.R. 21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALL failed to consider properly:  (1) the opinion of treating physician, Dr. Peterson, that plaintiff would be unable to complete a 40 hour work week; and (2) the opinion of treating physician, Yoon H. Kim, M.D., that plaintiff has a sleep disturbance, confusion, and paranoid thoughts and is unable to work or perform activities of daily living.  (Joint Stip. at 3.)  In rejecting these opinions, plaintiff claims that the ALJ improperly relied upon the opinion of medical expert Dr. Malancharuvil.  (*Id.* at 5-8.)

A.    Legal Standard

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*  It is well established that "[w]hen a treating physician's opinion is contradicted . . . , the ALJ must assess its persuasiveness in light of specified factors, including the 'length of the treatment relationship and the frequency of examination;' the 'nature and extent of the treatment relationship;' and the treating opinion's consistency 'with the record as

5

a whole.'" <u>Aranda v. Comm'r SSA</u>, 405 Fed. Appx. 139, 141 (9th Cir. 2010) (quoting <u>Orn</u>, 495 F.3d at 631).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." <u>Lester</u>, 81 F.3d at 831; *see* <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." <u>Andrews</u>, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." <u>Orn</u>, 495 F.3d at 632 (internal citations omitted).

B.  Medical Background

In January 2006, plaintiff was admitted to Riverside County Regional Medical Center and placed on a 5585 hold for "bizarre behavior after an alleged incident of being beaten up by other students at [his] school." (A.R. 122.) It was noted that plaintiff "was extremely paranoid, not making any sense and . . . hearing voices." (*Id.*) When plaintiff was medically stabilized, he was transferred to the psychiatric department. (*Id.*) "[Plainiff] was not able to give any reliable information due to his severe thought disorder, confusion and disorganization. He did, however, report that he was hearing voices telling him to do bad things and he was afraid that people were after him trying to kill him." (*Id.*) Plaintiff was placed on a 5250 hold for "continued confusion and ongoing delusions, paranoia and hallucinations," and his medication was increased. (*Id.*) Initially, plaintiff was "kept on one-to-one nursing observation due to his confusion; however, as he started showing improvement and became more alert, he was placed on Level 1 precautions."

1  (*Id.*) Plaintiff "needed frequent prompting regarding his activities of daily living and personal

2  grooming and hygiene; however, gradually he became self-sufficient in taking care of his basic

3  needs." (*Id.*)  In addition, plaintiff reported a decrease in his paranoia and hallucinations. (*Id.*)

4  Upon discharge, plaintiff denied any suicidal or homicidal ideation or intent. (A.R. 129.)  Plaintiff

5  was diagnosed with psychotic disorder, not otherwise specified, and was referred to Moreno

6  Valley Children's Interagency Program for individual and medication management. (*Id.*)  Plaintiff's

7  prognosis was described as "guarded." (*Id.*)

8

9       On February 6, 2006, in an Initial Psychiatric Evaluation performed at the Riverside County

10  Department of Mental Health, psychiatrist Elizabeth Roberts, M.D. noted that plaintiff had a

11  "guarded" presentation, good eye contact, normal appearance, minimal speech, "lethargic" and

12  "retarded" psychomotor skills, an "anxious" mood, a "constricted" and "blunted" affect; a "linear,"

13  "goal directed," and normal thought process, a normal attention span, an "intact" memory, an

14  "average" intelligence, "limited" judgment, and "poor" insight. (A.R. 256.)  In addition, Dr.

15  Roberts noted that plaintiff was fully alert and oriented as to time, place, and person. (*Id.*)  Dr.

16  Roberts diagnosed plaintiff with a psychotic disorder not otherwise specified and assessed plaintiff

17  with a GAF score of 48.[5]  (A.R. 257.)

18

19       Follow-up Medication Progress Notes show improvements in plaintiff's symptoms/mental

20  health status.  For example, in a March 8, 2007 Medication Progress, it was noted that plaintiff

21  had a depressed mood and very poor attention/concentration, but he had less auditory

22  hallucinations since being medicated. (A.R. 321.)  Medication Progress Notes from April 2007,

23  through October 2007, note that plaintiff's appearance, mood, affect, attention/concentration, and

24

25          [5]     A GAF score is the clinician's judgment of the individual's overall level of functioning.

26  It is rated with respect only to psychological, social, and occupational functioning, without regard
to impairments in functioning due to physical or environmental limitations.  DIAGNOSTIC AND

27  STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000).  A GAF rating of 41-50
reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

28  shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no
friends, unable to keep a job)." *Id.* at 34.

speech were "appropriate." (*See, e.g.,* A.R. 311 (10/24/07); A.R. 314 (8/29/07); A.R. 316 (6/27/07); 318 (4/30/07).)

In a December 18, 2007 Narrative Report, completed approximately one month after plaintiff's alleged onset date, his treating physician, Dr. Peterson, noted that plaintiff had a clearly organized thought process, no psychosis, intact memory, and intact judgment but also had an "anxious" attitude and evidence of insomnia and compulsive behaviors. (A.R. 359.) Dr. Peterson opined that plaintiff could manage his own funds in his best interest, but he would be "unable" to complete a 40 hour work week without decompensating. (*Id.*) Dr. Peterson commented that plaintiff's condition was:

> [d]ifficult to assess because [plaintiff] has [only] one . . . known episode of significant psychosis . . . [and] one minor episode since, when [he] used marijuana . . . , and in [the] absence of drug use (which he denies is a chronic problem and which he has an intent to avoid) he does well. [Plainiff] has expressed a desire to seek employment. It is likely this is a chronic psychotic, *i.e.*, schizophrenic, disorder.

(*Id.*) Dr. Peterson described plaintiff's prognosis as "guarded." (*Id.*)

Subsequent Medication Progress Notes dated January 2008, to May 2008, show continued improvement in plaintiff's condition and note plaintiff's appearance, mood, affect, and attention/concentration, and speech as "appropriate." (*See*, *e.g.*, A.R. 350 (5/1/08); A.R. 351 (3/6/08); A.R. 353 (1/10/08).)

In an August 18, 2008 Initial Psychiatric Assessment, plaintiff's treating physician, Dr. Kim, noted that plaintiff "had been on medication for psychotic disorder and was doing better" and denied any hallucinations, delusions, or sleep disturbances. (A.R. 361.) Dr. Kim described

plaintiff's mood as "more talkative" and "distract[ed]." (*Id.*) Dr. Kim described plaintiff's anxiety as "persistent avoidance of certain situations." (*Id.*) Dr. Kim assessed plaintiff with "poverty of speech," normal motor activity, good eye contact, "responsive" interactions, good concentration, "alert" level of consciousness, euthymic mood, appropriate affect, normal thought processes, and no delusions or perceptions/hallucinations. (A.R. 363.) In addition, Dr. Kim opined that plaintiff has an "average" general fund of knowledge, "fair" insight and judgment, and "fair" impulse control. (*Id.*)

In a Medication Progress Note dated December 11, 2008, Dr. Kim noted that plaintiff is searching for jobs "often" and trying to lift weights and play soccer. (A.R. 373.) Dr. Kim described plaintiff's appearance, mood, affect, attention, and concentration as "appropriate," and Dr. Kim described plaintiff's speech as "minimal." (*Id.*) Dr. Kim also noted that plaintiff had no hallucinations or delusions. (*Id.*)

In a Care Plan dated February 11, 2009, Dr. Kim noted that plaintiff's treatment goal was to "prevent psychotic thinking." (A.R. 398.) Dr. Kim noted that plaintiff denied paranoid thoughts. (*Id.*) Dr. Kim also noted that plaintiff has a psychotic disorder, is unable to work, and benefits from medication. (*Id.*) Curiously, on that same day, in a separate Medication Progress Note, Dr. Kim noted plaintiff's appearance, mood, affect, and attention/concentration as normal and further indicated that plaintiff did not have any hallucinations, delusions, sleep problems, appetite problems, or drug/alcohol use at that time. (A.R. 372.) While Dr. Kim noted that plaintiff's speech was "minimal," Dr. Kim also noted that plaintiff's medication was "effective," and Dr. Kim considered reducing plaintiff's medication dosage. (*Id.*) In addition, Dr. Kim noted that plaintiff was "try[ing] to find a job" and "doing things around the house." (*Id.*)

In Medication Progress Notes dated April 2009, to July 2009, Dr. Kim noted that plaintiff's appearance, mood, affect, and attention/concentration were "appropriate," but his speech was "minimal." (*See, e.g.*, A.R. 367 (7/29/09); A.R. 368 (5/27/09); A.R. 369 (4/8/09).)

1    In a Psychiatric Re-Assessment Care Plan dated August 20, 2009, Dr. Kim diagnosed

2    plaintiff with "psychotic disorder [not otherwise specified] by history" and assessed plaintiff with

3    a GAF score of 60.[6]  (A.R. 400.)  Dr. Kim noted that plaintiff did not have any mood, anxiety, or

4    somatic disorders, and there was no current evidence of psychosis.  (A.R. 401.)  After conducting

5    a mental status examination of plaintiff, Dr. Kim noted that plaintiff had "poverty of speech,"

6    "normal" motor activity, "good" eye contact, "responsive" interactions, an "alert" level of

7    consciousness, "good" concentration, an "intact" memory, a "euthymic" mood, an appropriate

8    affect to mood, an "average" general fund of knowledge, "fair" insight and judgment, "fair"

9    impulse control, "normal" thought processes, orientation congruent to mood, and no delusions,

10   perceptions/hallucinations, obsessions, compulsions, or phobias.  (A.R. 403.)  In addition, Dr. Kim

11   noted that plaintiff was oriented as to person, place, time, and purpose.  (*Id.*)

12

13   In a Medication Progress Note dated October 15, 2009, Dr. Kim noted that plaintiff "keeps

14   [his] feelings inside," "go[es] out on weekend[s] . . . [with] a friend," and is "consider[ing] Adult

15   School."  (A.R. 399.)  After performing a mental status examination, Dr. Kim noted that plaintiff

16   had an "appropriate" appearance, an "anxious" mood, a "full range" affect, a "normal/goal

17   directed" thought process, and no obsessions, preoccupations, ideas of reference, excessive guilt,

18   delusions, though broadcasting, or hallucinations.  (*Id.*)  Dr. Kim described plaintiff's cognition as

19   "oriented/alert" and "distracted" and described plaintiff's judgment/insight as within normal limits.

20   Dr. Kim noted that plaintiff's response to medication had been "positive."  (*Id.*)

21

22   In a Medication Progress Note dated January 5, 2010, plaintiff described his current status

23   as "good" but stated that he was "running out [of] med[ication]."  (A.R. 391.)  After conducting

24   a mental status examination, Dr. Kim, assessed plaintiff with an "appropriate" appearance, a

25   "neutral" mood, a "full range" affect, and a "normal/goal directed" thought process.  (*Id.*)  In

26   addition, Dr. Kim noted that plaintiff did not have any obsessions, preoccupations, delusions, or

27   _____

28      [6]    A GAF of 51–60 shows moderate symptoms, such as those which would affect
speech, or moderate difficulty in social, occupational, or school functioning.  DSM-IV-TR, at 34.

hallucinations, and Dr. Kim noted that plaintiff's cognition was "oriented/alert," and his judgment/insight was within normal limits.  (*Id.*)  On that same day, Dr. Kim updated plaintiff's Care Plan "in order for [plaintiff] to see [him] through triage."  (A.R. 393.)  Two Goals were identified in plaintiff's care plan.  Plaintiff's first goal was to "keep 2 [out of 3 of his medical] app[ointments] to prevent decompensation."  (A.R. 394.)  Dr. Kim noted that plaintiff had been diagnosed with a "psychotic d[isorder not other specified] (sleep disturbance, confusion, paranoid ideation)."  (*Id.*)  In addition, it was noted that plaintiff was "unable to perform basic [activities of daily living] skills due to [illegible]."  (*Id.*)  Plaintiff's second treatment goal was to prevent "a hospitalization" or any delusions or hallucinations.  (A.R. 396.)  It was noted that plaintiff currently "denies hallucination[s], paranoid thought[s]."  (*Id.*)   It was also noted that plaintiff has a psychotic disorder, is unable to work, and benefits from medication.  (*Id.*)

Plaintiff's Medication Progress Note dated April 19, 2010, indicates that he ran out of medication and experienced difficulty sleeping.  (A.R. 386.)  Plaintiff was assessed with an "appropriate" appearance, a "neutral" mood, a "full range" affect," and a "normal/goal directed" thought process.  (A.R. 386.)

C.  Analysis

In assessing plaintiff's allegedly disabling mental impairments, the ALJ carefully reviewed and weighed the opinions of a number of medical sources in accordance with the proper legal standards.  While it is true, as noted *supra*, that the opinion of a treating physician is generally entitled to the greatest weight, the ALJ gave little probative weight to the opinions of plaintiff's treating physicians, Dr. Peterson and Dr. Kim, for several reasons.  The Court examines the ALJ's reasons below to determine whether they are specific and legitimate and supported by substantial evidence.

First, the ALJ rejected the opinions of plaintiff's treating physicians that plaintiff is unable

1    to work, because plaintiff's treating physicians lack the requisite expertise to make such a

2    determination.   The ALJ correctly observed that such determinations "require a vocational

3    assessment." (A.R. 19.) Thus, the ALJ provided a specific and legitimate reason for rejecting the

4    treating physicians' opinion that plaintiff is unable to work.   20 C.F.R. §§ 404.1527(e)(1),

5    416.927(e)(1) ("We are responsible for making the determination or decision about whether ou

6    meet the statutory definition of disability. . . .   A statement by a medical source that you are

7    'disabled' or 'unable to work' does not mean that we will determine that you are disabled.");

8    Boardman v. Astrue, 286 Fed. App'x 397, 399 (9th Cir. 2008) (noting that the "ALJ is correct that

9    a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a

10   physician's opinion on the matter is not entitled to special significance").

11

12         Second, relying on the testimony of medical expert Dr. Malancharuvil, the ALJ rejected the

13   opinions of plaintiff's treating physicians, because they are internally inconsistent and unsupported

14   by the objective medical evidence of record. (A.R. 18-20.) For example, the ALJ observed that

15   while Dr. Peterson's report[7] notes that plaintiff has insomnia, compulsive behaviors, and cannot

16   complete a 40-hour workweek, Dr. Peterson's report also, and contradictorily, indicates that:

17   "[p]laintiff's thought process [i]s clearly organized; he ha[s] no psychotic symptoms; and he ha[s]

18   intact memory and judgment." (A.R. 18.)  Similarly, with respect to Dr. Kim, the ALJ noted that

19   while Dr. Kim's treatment notes indicate that plaintiff has confusion and paranoid thoughts, they

20   also indicate that plaintiff denies hallucinations and paranoid thoughts.[8] (A.R. 20; compare A.R.

21

22         [7]    While the ALJ did not refer to the treating physicians by name, the ALJ did
     specifically reference the treatment notes completed by both physicians.  Indeed, it was difficult
23   for this Court to determine the names of the treating physicians, and plaintiff did not refer to the
     treating physicians by name in the Joint Stipulation.

24         [8]    In his treatment notes, Dr. Kim noted that plaintiff "den[ies] hallucination[s],
25   paranoid thoughts." (A.R. 396.)  Plaintiff contends that "[w]hen this statement is considered in
     context with [Dr. Kim's] other notes . . . , it becomes clear that the [Dr. Kim] was indicating
26   [p]laintiff denies that he has hallucinations, but he has paranoid thoughts." (Joint Stip. at 6.)
     Accordingly, plaintiff claims that "the ALJ and [Dr. Malancharuvil] took the statement out of
27   context" in finding that Dr. Kim's opinion was not supported by his own treatment notes. (Id.)
     Although the statement in Dr. Kim's treatment note -- to wit, "deny hallucination, paranoid
28   thought" -- could be susceptible to an interpretation more favorable to plaintiff, the ALJ's
     interpretation is rational, and this Court must "uphold the ALJ's decision where the evidence is

1  395 (confusion and paranoid ideation), *with* A.R. 396 ("deny hallucination, paranoid thought").)

2  Further, the ALJ properly notes that the treating physicians' treatment notes are inconsistent with

3  other progress notes showing that plaintiff is oriented in all spheres, is alert, and denies delusions

4  and hallucinations.   (A.R. 20.)   Thus, the ALJ provided a specific and legitimate reason for

5  rejecting the opinions of plaintiff's treating physicians.   *See* Batson v. Comm'r of Soc. Sec., 359

6  F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are

7  unsupported by the record as a whole or by objective medical findings); Magallanes, 881 F.3d at

8  751-54 (upholding ALJ's rejection of treating doctor's opinion that was contradicted by the

9  record).

10

11      Moreover, the ALJ's decision to afford great weight to the opinion of Dr. Malancharuvil in

12  assessing plaintiff's mental impairments and limitations is supported by substantial evidence.   As

13  the ALJ properly noted, Dr. Malancharuvil's opinion is entitled to great weight, "because he

14  appeared at the hearing; he questioned [plaintiff]; he most recently reviewed the entire record;

15  and his restrictions appear to take into consideration [plaintiff]'s subjective complaints and the

16  objective treatment record."   (A.R. 21.)   Plaintiff relies on Bousquet v. Apfel, 118 F. Supp. 2d

17  1049, 1054 (C.D. Cal 2000), to argue that the ALJ should not have relied on the opinion of Dr.

18  Malancharuvil over those of plaintiff's treating physicians.     However, as the Commissioner

19  properly notes, plaintiff's reliance on Bousquet is misplaced.   In Bousquet, the court specifically

20  acknowledged that an ALJ "may rely on a medical advisor's testimony to reject a treating or

21  examining physician's opinion when there is other substantial evidence in the record to support

22  the medical advisor's testimony." *Id.* at 1054 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169

23  F.3d 600, 602-03 (9th Cir. 1999); Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996)).   As

24  noted *supra*, the objective evidence shows that other than plaintiff's significant psychotic episode

25  in 2006, plaintiff has responded well to his medications and has consistently had normal mental

26

27  susceptible to more than one rational interpretation."   Burch, 400 F.3d at 680-81 (quoting

   Magallanes, 881 F.2d at 750 (internal quotation marks omitted).   Moreover, Dr. Kim's treatment

28  notes consistently note that plaintiff does not have paranoid thoughts and, thus, support the ALJ's

   interpretation.

1   status examinations.  This objective medical evidence of record coupled with the opinions of the

2   State agency reviewing physicians and plaintiff's testimony at the administrative hearings support

3   Dr. Malancharuvil's opinion.  Further, unlike the medical expert in <u>Bousquet</u>, Dr. Malancharuvil

4   never stated that the record was inadequate or that he did not have enough information to reach

5   a definitive conclusion with respect to plaintiff's diagnosis.  Rather, Dr. Malancharuvil, specifically

6   noted that the objective medical evidence, which showed a significant and continued

7   improvement in plaintiff's condition, did not support the conclusory opinions by Dr. Kim and Dr.

8   Peterson that plaintiff is disabled.   In addition, unlike the medical expert in <u>Bousquet</u>, Dr.

9   Malancharuvil, had the opportunity to hear plaintiff describe his impairments and symptoms and

10  had the opportunity to ask him questions.

11

12       Accordingly, for the aforementioned reasons, the ALJ properly considered the opinions of

13  plaintiff's treating physicians and afforded great weight to the opinion of medical expert Dr.

14  Malancharuvil.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

///

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  January 24, 2014

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

15